## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**MARICELYS TORRES**,

    Plaintiff,

    v.

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.

           **Civil No. 21-1393 (BJM)**

### OPINION AND ORDER

Maricelys Torres ("Torres") seeks review of the Commissioner's finding that she is not disabled and thus not entitled to disability benefits under the Social Security Act (the "Act"). 42 U.S.C. § 423. Torres contends that the Administrative Law Judge's ("ALJ") step five findings were not supported by substantial evidence. ECF Nos. 1, 12. The Commissioner opposed. ECF No. 14. This case is before me on consent of the parties. ECF Nos. 4-5. After careful review of the administrative record and the briefs on file, and for the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

### STANDARD OF REVIEW

After reviewing the pleadings and record transcript, the court has "the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner." 20 U.S.C. § 405(g). The court's review is limited to determining whether the Commissioner and her delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Secretary of Health & Human Services*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Secretary of Health & Human Services*, 955 F.2d 765, 769 (1st Cir. 1991). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Visiting Nurse Association Gregoria Auffant, Inc. v. Thompson*, 447 F.3d 68, 72 (1st Cir. 2006) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court "must affirm the [Commissioner's] resolution, even if the record arguably could

justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Secretary of Health & Human Services*, 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when she "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

Generally, the Commissioner must employ a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Goodermote v. Secretary of Health & Human Services*, 690 F.2d 5, 6–7 (1st Cir. 1982). In step one, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At step three, the Commissioner must decide whether the claimant's impairment is equivalent to a specific list of impairments contained in the regulations' Appendix 1, which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, she is conclusively presumed to be disabled. If not, the ALJ assesses the claimant's residual functional capacity ("RFC")[1] and determines at step four whether the impairments prevent the claimant from doing the work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. § 404.1520(e). If she cannot perform this work, the fifth and final step asks whether the claimant is able to perform other work available in the national economy in

---

[1] An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 404.1520(e) and 404.1545(a)(1).

view of her RFC, as well as her age, education, and work experience.  If the claimant cannot, then she is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

At steps one through four, the claimant has the burden of proving that she cannot return to her former employment because of the alleged disability.  *Santiago v. Secretary of Health & Human Services*, 944 F.2d 1, 5 (1st Cir. 1991).  Once a claimant has demonstrated a severe impairment that prohibits return to her previous employment, the Commissioner has the burden under step five to prove the existence of other jobs in the national economy that the claimant can perform.  *Ortiz v. Secretary of Health & Human Services*, 890 F.2d 520, 524 (1st Cir. 1989). Additionally, to be eligible for disability benefits, the claimant must demonstrate that her disability existed prior to the expiration of her insured status, or her date last insured.  *Cruz Rivera v. Secretary of Health & Human Services*, 818 F.2d 96, 97 (1st Cir. 1986).

## BACKGROUND

The following is a summary of the pertinent parts of the treatment record, consultative opinions, and self-reported symptoms and limitations as contained in the Social Security transcript.

Torres was born on December 6, 1974, has a twelfth grade education, is unable to communicate in the English language but does so in the Spanish language, and worked in fast food services from 2009 to 2015. Torres applied for disability insurance benefits on June 2, 2016, claiming to have been disabled since November 3, 2015 (onset date) at age 40 due to lumbar and cervical spine disorders (disc bulge at the L4-L5 and L5-S1 levels and cervical degenerative disc disease). She last met the insured status requirements on December 31, 2020 (date last insured). Social Security Transcript ("Tr.") 21-22, 24, 33, 36, 443, 453, 616-617, 632, 634-636.

*Treating Physicians*

**Policlínica Familiar Bernice Guerra**

Torres visited an emergency room in August 2014 and August 2015 for moderate lower back pain. The pain was persistent, continuous, and of short duration. Medications were prescribed. Tr. 758-761, 784-787. In January, April, June, and October 2016, Torres again visited the emergency room for moderate right back pain. In January 2016, she also experienced pelvic pain. In April, she also felt the lower back pain extending to her right leg. The pain was acute, persistent, continuous, and of long duration. Body position increased the pain. Medications were prescribed. Tr. 298, 800-803, 808-812, 815-818, 881-886.

An April 2016 lumbosacral spine x-ray revealed straightening of the normal lumbar lordosis suggesting a muscle spasm with otherwise normal lumbar vertebral bodies, posterior elements, and intervertebral disc spaces. Phleboliths on the left side of the pelvis were also observed. Tr. 750, 814.

The handwritten notes are illegible.

**Hospital Metropolitano**

In November 2014, Torres went to the emergency room to treat back pain due to a contusion at work. Medications (Ultracet and Flexeril) were prescribed. Tr. 694-695.

Lumbar, thoracic, and cervical spine x-rays revealed straightening of the normal lumbar and cervical lordosis, likely related to muscular spasm and early or mild spondylosis of the cervical, thoracic, and lumbar vertebral bodies. There was mild spurring of the facets at the C5-C6, C6-C7, L4-L5, and L5-S1 levels and of the uncovertebral joints at the C5-C6 and C6-C7 levels; slight grade I retrolisthesis of L4 on L5 and slight thoracic and lumbar spine curvature convex to the right, and mild bony osteopenia; mild thoracic and cervical anterior wedging (for which follow-up was recommended for the thoracic spine); and some disc space narrowing. In the thoracic spine, no compression fracture was detected and the disc spaces and sacroiliac joints were maintained. A congenital blocked vertebrae at the C3-C4 level and grade I anterolisthesis of C2 on C3 and C4 on C6 were also detected. Tr. 696-697.

**State Insurance Fund ("SIF")**

From December 2014 to December 2015, Torres was treated for moderate thoracic and lumbar/sacral back pain. The referral for treatment under the auspices of the SIF, dated May 12, 2015, indicates that Torres jumped over a counter at work to deactivate an alarm and fell and hit the middle of her back against a freezer behind the counter. A May 2015 thoracic spine MRI revealed no disc herniation, spinal canal stenosis, or neural foraminal narrowing. Torres walked without difficulty and physical exam of her extremities was normal. October 2015 notes indicate positive straight leg raise test. She was diagnosed with sprain of ligaments of the thoracic and lumbar spine. Medications were prescribed. Tr. 309, 704-726, 837-846, 854-878, 894.

According to physical therapy notes from March, May, and June 2015, Torres felt moderate pain and displayed moderate muscular spasms and inflammation in the lumbar paravertebral area but achieved increased range of lumbar movement. Her postural response to sitting was good, and her responses to standing and walking fluctuated between average and good. She could tolerate

eleven to thirty minutes (out of thirty minutes) of sitting, standing, or walking; in June, she could tolerate five to ten minutes. Torres reported feeling a bit better after therapy, but she could not remain in one position for long or bend to pick something off the floor because the pain increased. In July, Torres claimed that therapy did not help. Tr. 117-120, 125-126, 129-130, 712-715, 720-721, 724-725. Most of the handwritten notes are illegible.

A January 2016 radiology report indicates the presence of degenerative changes and disc disease, lumbar spasm, and straightening of the lumbar curvature; circumferential disc bulge at the L4-L5 and L5-S1 levels; mild central canal and moderate bilateral neural foraminal narrowing at the L4-L5 level; and mild central canal and right neural foraminal narrowing at the L5-S1 level. There was no evidence of spondylolysis, spondylolisthesis, or vertebral body collapse. Tr. 703, 836. An electromyography nerve conduction velocity study of her lower extremities was also performed in January 2016, which showed radiculitis at the S1 level. Tr. 47, 698.

From February to November 2016, Torres reported intense thoracic back pain and moderate lumbar pain and was diagnosed with ligament sprain of the thoracic and lumbar spine. Medications were prescribed. Tr. 699-702, 834-835, 848-853, 893, 895-920, 971-986. These notes are mostly illegible. In June 2016, positive straight leg raise tests and an electrodiagnostic study confirmed radiculopathy. Tr. 698, 848. In August 2016, Torres underwent two low back infiltrations. Tr. 821.

In January to October 2017, Torres continued with the diagnosis of sprain of ligaments of the thoracic and lumbar spine and still felt moderate low back pain. Tr. 958-970. Most of the notes are illegible. An April 2017 MRI of the lumbosacral spine showed normal alignment and curvature, and disc space narrowing and degeneration at L4-L5 and L5-S1. At the L4-L5 level, there was a small disc bulge with tiny central annular fissure which abuts the thecal sac. At the L5-S1 level, there was disc bulge which abuts the thecal sac resulting in narrowing of the right neural foramina. There was no spinal canal stenosis detected at either level. Tr. 950. Three lumbar facet blocks were scheduled for April and May 2017. Tr. 328, 907.

January to February 2018 and January to March 2019 notes indicate that Torres still had moderate low back pain. Tr. 951-957, 1050-1053. These notes and an April 2019 "Special Medical Report" (Tr. 428, 1045) are illegible. Tr. 48-49, 428.  The legible part of the January 2018 notes indicates that Torres should avoid lifting, pushing, and pulling more than ten pounds and avoid fixed postures.  Tr. 951. In May 2019, a small hiatal hernia was detected. Tr. 1059.

**Dr. Jorge Miranda Alicea**

In August and October 2015, Dr. Miranda diagnosed anemia and headaches. Tr. 735, 743-744, 934-936.

In March, April, July, and December 2016, Torres complained of lower back pain that radiated to her right leg, which she rated a 5. Back curvature was normal. There was lumbar tenderness that radiated to the right leg. Range of movement ("ROM") was adequate. Dr. Miranda diagnosed low back, pelvic, and abdominal pain and acute sciatica. Tr. 727, 732-733, 886-891, 926-933, 997. A March pelvic ultrasound showed a mildly enlarged uterus. Tr. 729, 937. A March abdominal ultrasound and an x-ray showed evidence of a previous cholecystectomy. Tr. 938-939. A December lumbar spine study revealed straightening of the normal lumbar lordosis likely related to muscular spasm and early lumbar spondylosis with slight grade 1 retrolisthesis of L2 on L3, L3 on L4 and L4 on L5 with L5-S1disc space narrowing and with early spurring of the facets at the L4-L5 and L5-S1 levels. Tr. 949.

In February and May 2017, Torres complained of muscle pain, left breast discomfort, and anxiety. She rated her pain at a 5-6. In these two appointments, Dr. Miranda diagnosed retrolisthesis, pure hypercholesterolemia, reduced anion gap, dermatitis, asthma, a sleep disorder and anxiety, and referred her to a bilateral mammogram and psychiatric and psychological evaluation. Tr. 413, 993-996.

In March and May 2018, Torres complained of worsening lower back pain, which she rated at a 5.  Dr. Miranda diagnosed a back spasm, low back pain, lumbar spondylosis, anemia, pure hypercholesterolemia, disorder of electrolytes, and anxiety. Tr. 989-992.  An April 2018 lumbar spine study revealed straightening of the normal lumbar lordosis likely related to muscular spasm and early lumbar spondylosis with L5-S1 disc space narrowing with minimal grade 1 retrolisthesis of L4 on L5 and with spurring of the facets at the L4-L5 and L5-S1 levels. Tr. 987. The thoracic spine study revealed anterior wedging at the mid thoracic level with mild endplate depression, disc space narrowing at the upper mid-thoracic level, mild spondylosis, and a slight curvature of the mid thoracic spine convex to the right. Tr. 988.

In November 2018, and February 2019, Dr. Miranda diagnosed lumbar spondylosis and low back pain, chronic gastritis and gastric reflux. Her body mass index ("BMI") was above normal parameters. Tr. 1030-1033, 1046-1049.

During this period from 2015 to 2019, Torres's back curvature was normal but she had lower back tenderness, and her extremities ROM was adequate, with no deformities or edema. Medications were prescribed and diet and exercise were recommended.

In April 2019, Dr. Miranda diagnosed lumbar spondylosis, lumbalgia, lumbar retrolisthesis, and lumbar muscle spasm. Medications were prescribed. Tr. 1034. Dr. Miranda assessed that Torres could sit for two hours with rest periods in an eight-hour workday and stand/walk for two hours with rest periods. She could frequently (34% to 66%) lift and carry less than ten pounds, occasionally (6% to 33%) lift and carry ten pounds, rarely (1% to 5%) lift and carry twenty pounds, and never lift and carry fifty pounds. Torres could rarely bend or squat, and could occasionally crawl, climb, or kneel. Torres needed unscheduled breaks. She had no limitations doing gross manipulation with her hands, fine manipulations with her fingers, or reaching with her arms (including overhead). Tr. 1035.

A lumbar spine MRI dated May 22, 2019, revealed discogenic sclerosis at L4-L5 with listhesis, and broad based disc bulges and facet synovitis contributing to narrowing of the neural foramina at L4-L5 on the left and L5-S1 bilaterally. Tr. 1060.

A radiology report dated July 23, 2019, indicates that Torres had degenerative changes of the right hip with early enthesopathic changes at the muscular attachment sites in the right hemipelvis, degenerative changes of the symphysis pubis, and mild bony osteopenia. Tr. 1061.

Nerve studies dated July 23, 2019, rendered normal results. There was no evidence of lumbosacral radiculopathy or peripheral polyneuropathy. Tr. 1062-1065.

### Procedural History

Torres did not submit function reports. Tr. 27.

Dr. Jorge Padilla-Rodríguez (sports and spine medicine and rehabilitation) evaluated Torres on August 19, 2016, and diagnosed neck, lower back, hip, and right leg pain; back spasm; cervical, thoracic and lumbosacral degenerative disc disease ("DDD") and degenerative joint disease ("DJD"); lumbosacral radiculopathy, herniated nucleus pulposus, stenosis, scoliosis and listhesis; hip DJD; and thoracic spine osteopenia and scoliosis. Dr. Padilla noted that Torres was still under SIF care, that she had undergone two low back infiltrations (one just the week prior), that she complained of lower back pain with radiation to her right leg with associated dysesthesia, and had difficulty with seat to stand transfers and with ambulation. Her gait was antalgic. She limped on her right side but was able to walk 15-20 feet with no gait aid and no disturbances, even on tip-

toes or heels. Her balance was inconsistent and she would intermittently require support such as walls but did not lose balance. Her back, neck, and hip ROM were reduced. Torres's lumbar flexion was 30 degrees when normal flexion is 90. Straight leg raise test was positive on the right side. A muscle spasm was evident in her lumbar area. DJD changes were minimal in her hands, and her hand function and muscle strength were normal. She could bilaterally grip, grasp, pinch, finger tap, oppose fingers, button a shirt, pick up a coin, and write. Dr. Padilla also noted that Torres was anxious and depressed.  Tr. 820-830.

An August 2016 cervical spine x-ray showed congenital fusion of the C3 and C4 vertebrae and degenerative spondylosis, and neural foraminal stenoses at the C4-C5, C5-C6, and C6-C7 levels. Tr. 832.

On September 9, 2016, Dr. Magda Rodríguez, internist, assessed from the case record that Torres had a severe condition (DDD and lumbar bulging with right S1 radiculopathy) but that the impairments did not meet or equal any listing severity. As to exertional limitations, in an eight-hour workday, Torres retained the RFC to occasionally (cumulatively one-third or less of an eight-hour workday) lift and/or carry (including upward pulling) twenty pounds and ten pounds frequently (cumulatively more than one-third up to two-thirds), stand and/or walk with normal breaks for six hours, and sit with normal breaks for six hours. Torres had to avoid work that required leg control operations because repetitive activities could activate or worsen her radiculopathy symptoms and cause additional nerve damage, affecting sustained work performance over time.  She also should avoid occasionally pushing and/or pulling (including operation of hand and/or foot controls) with her right leg. As to postural limitations, Torres could frequently climb ramps/stairs and ladders/ropes/scaffolds. She could frequently balance and kneel and could occasionally stop (bend at the waist) and crouch (bend at the knees). As to environmental limitations, Torres had to avoid exposure to fumes, odors, dusts, gases, and poor ventilation, unprotected heights, and commercial driving. Torres had no manipulative, visual, or communicative limitations. Tr. 450-451. Torres had the RFC to perform past relevant work (fast food worker) as generally performed in the national economy and was therefore not disabled. Tr. 453-454.

Dr. Rodríguez noted that because no function report was available, a consistency assessment was not possible and that the "RFC was performed considering the impact of all

medical conditions documented on record, side effects of medications and those activities that could worsen [claimant's] medical problems or [affect] performance at work." Tr. 448.

The claim was initially denied on September 20, 2016, with a finding that her back and neck conditions affected her ability to perform some work tasks but did not impede her from performing her previous job as a fast food establishment employee. Tr. 93, 455, 474. Torres requested reconsideration and submitted additional evidence but did not claim new conditions or worsening of her existing conditions. Tr. 457, 460, 478, 646.

On January 30, 2017, Dr. Ulises Meléndez reviewed the record, considered Torres's back disorders, and concluded that the initial determination was correct. Tr. 461-468. The claim was denied on reconsideration on February 1, 2017, affirming the initial determination. Tr. 97, 469, 479.

Torres requested a hearing before an ALJ on February 16, 2017, and claimed that the pain in her lower back and right leg were more intense since November 2016, that she could not bend, that it took her longer to walk long distances and finish household tasks, that she had difficulty putting on her clothes, and that she could no longer drive a car. Tr. 482-484, 656, 660.

A hearing was held before ALJ Julicel Sepúlveda on November 27, 2018. Torres and vocational expert ("VE") Dr. Ariel Cintrón testified.

Torres testified that a stabbing pain would start on her right side and did not allow her to sit for long. The pain would spread to her thighs and soles of her feet. Her right leg hurt all the time. Her neck did not hurt. Her hands would tingle a little. She worked as a cashier and then as a supervisor at a fast food restaurant until she stopped working in 2015. She then tried to work again but stopped two days later because she could no longer produce the correct quality of work, such as handle the weight of boxes. Her duties included being a cashier, serving the public, taking out the trash, closing and cleaning the store, and stocking the refrigerators. As a supervisor, she supervised ten to twelve employees, opened the store, counted the merchandise, assigned tasks, balanced the register, and went to the bank. She was tested and treated at the SIF with therapy, infiltrations and blocks, but in January 2018, Dr. Marisol Rivera from the SIF told her there was nothing else they could do for her and referred her to a neurologist. Her appointment was in April 2019. Her medications were Norflex twice a day and Naproxen, which relaxed her and made her groggy. She would sleep through the pain, remaining in bed about twenty days out of the month. She used to be on Neurontin. At home, her daughter cleaned the house, cooked, and did the

shopping because Torres didn't feel stable enough to stand in front of the stove or have the strength to do chores. She would sit in her recliner and watch television. Torres could walk for twenty minutes before having to sit down. She could lift and carry five to six pounds frequently. She had trouble bending, crouching, and crawling because it put pressure on her side. She also had trouble getting dressed. She'd put her pants on by lying down on her bed and slowly pulling them up, and wore shoes she could slip into, such as flip-flops, and clothes that did not require ironing. Tr. 71-83.

For a first hypothetical, the ALJ asked the VE if Torres could work if: she could lift and carry twenty pounds occasionally and ten pounds frequently; sit, stand, or walk for six hours in an eight-hour period; frequently climb ramps and steps, ladders, ropes, or scaffolds, balance, kneel, and crawl; occasionally stoop and crouch; occasionally be exposed to unprotected heights, to moving mechanical parts, operate a motor vehicle commercially; and be exposed to lung irritants. The VE answered that Torres could do her previous jobs. Tr. 84.

For the second hypothetical, the ALJ asked that if, under light exertion, Torres could work if she could sit for six hours but only stand or walk for two hours because of her problems; frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance but only occasionally stoop, kneel, crouch, and crawl; and the same environmental limitations as in the first hypothetical. The VE answered that Torres's jobs mainly involved standing and walking, so she wouldn't be able to perform them. Tr. 84-85.

When asked if there were any light jobs that Torres could perform, the VE answered that she could work as a wire worker/electrical industry (light, nonskilled, routine, and repetitive; SVP of two), mail clerk (clerical)(light, SVP of two, nonskilled), and surgical instruments inspector (light work, SVP of two, nonskilled). The VE also answered that these jobs could be performed by standing or walking for four hours. Tr. 85.

The ALJ then asked if Torres could do the light jobs mentioned if she had the previous postural and environmental limitations but at a sedentary level: she could lift ten pounds occasionally and less than ten pounds frequently, and sit for six hours but stand or walk for two hours in an eight-hour period. The VE answered that she could not do those light jobs in a sustained way but that there were nonskilled sedentary jobs (SVP of two) that she could perform, such as hotel and restaurant order clerk, charge account clerk, and addresser. Tr. 85-86.

The ALJ also asked if Torres could do the sedentary jobs mentioned in the third hypothetical question if she had those postural and environmental limitations except that she could only sit for five hours, and she needed to alternate positions every hour without having to move from the workplace. She could get up and stand every hour for two minutes. The VE answered that Torres could not do those sedentary jobs or any job. Tr. 87.

Counsel for Torres added if she had to be absent from work at least four times a month due to her conditions. The VE answered that she could not work. Tr. 87.

Post-hearing, Dr. David Blas Boria, neurologist, examined Torres on December 14, 2018, for low back and neck pain complaints and diagnosed right lumbar radiculopathy and suspected right cervical radiculopathy. Torres had reduced strength in her right leg with weakness. Straight leg raising test was positive. The physical exam was remarkable for right upper and lower extremities sensory loss and "give away weakness" due to pain and tenderness to palpation over the right wrist, right elbow, medial arm, and right cervical and lumbar paraspinal muscles. Torres had right shoulder, cervical, and lumbar ROM restrictions. Her lumbar region ROM (flexion/extension) was 60 degrees on a scale of 0 to 90. She walked with a rigid spine, intermittently limped from the right leg, and was unable to walk over heels, toes, or tandem. As to hand function, Torres had no limitations; she was able to grip, grasp, pinch, finger tap, oppose fingers, button a shirt, pick up a coin, and write with both hands.  Dr. Blas assessed that Torres could sit, stand, walk as described above, and travel, and she could handle and lift common objects. Dr. Blas noted in patient history that Torres complained of intermittent neck pain that radiated to her lower back, that she reported being unable to sit or stand for prolonged periods of time due to low back pain, and that she was able to bathe, go to the toilet, and dress without assistance. Tr. 1020-1029.

A supplemental hearing was held on May 20, 2019. Medical expert ("ME") Dr. Jorge Hernández Denton testified that while the medical evidence was not clear and showed mild pathology and a SIF discharge with no referral to a neurosurgeon (Tr. 52-53), it did show that since 2014 Torres suffered from chronic lumbar pain which radiated mostly to the right leg. Tr. 46. Dr. Hernández noted from Dr. Padilla's notes that Torres's lumbar flexion was 30 when normal flexion is 90, and "she wasn't using a cane, but she was limping to protect that right leg" and from Dr. Blas's notes that Torres had an antalgic gait limping, positive straight leg raise, lumbar radiculitis, and loss of sensation in the right leg, but that her lumbar flexion was 60 degrees, meaning there

was improvement from 2016 to 2018. Dr. Hernández testified that Torres's conditions did not meet or medically equal a listed impairment and assessed that Torres could perform sedentary work: lift/carry ten pounds occasionally and less than ten pounds frequently, stand and walk for two hours each and sit for six hours. She could stand every hour to stretch for one minute without having to abandon her work area. She could occasionally climb stairs and ramps but never climb ladders, ropes, or scaffolds. She could balance frequently, and occasionally stoop, kneel, and crouch. She could never crawl or be in unprotected heights. She could occasionally move mechanical parts and drive. ME Dr. Rosamari Peña testified that there was no evidence for emotional conditions, therefore no listing was met. Tr. 46-61.

Torres testified that since six months ago she no longer drove. Tr. 55.

For the first hypothetical at this hearing, VE Cintrón was asked if Torres could perform sedentary jobs of order clerk, charge account clerk, and addresser, considering her age and lack of knowledge of the English language, and limitation to sedentary exertional level (lift and carry ten pounds occasionally and less than ten pounds frequently; sit for six hours and stand and walk for two hours; push and pull as much as she could lift and carry; occasionally climb stairs and ramps, stoop, kneel, and crouch; never climb ladders, ropes, scaffolds or crawl; frequently balance; never be exposed to unprotected heights but occasionally be exposed to moving mechanical parts and operating motor vehicles; and she needed to stand up for one minute to stretch without leaving her work area). The VE answered that Torres's past work was light but that she could perform those sedentary jobs. Counsel asked if Torres could perform jobs in the national economy if in addition Torres needed unscheduled breaks of ten minutes. The VE answered that she could not. Tr. 61-65.

For the second hypothetical, the ALJ also considered Dr. Miranda's and Dr. Hernández's RFC assessments and asked if Torres could perform the sedentary jobs mentioned if she could instead sit for two hours on a sustained basis, occasionally crawl, and less than occasionally crouch. The VE answered that Torres could. Tr. 63-65.

The VE added that Torres could perform the sedentary jobs of order clerk, charge account clerk, and addresser, even if she didn't have knowledge of the English language. If she needed to rest for ten minutes after sitting for one hour, she would not be able to work on a sustained basis. Tr. 61-65.

A consultative examination conducted by Dr. Claudia Camunas, neurologist, on September 16, 2019, revealed normal results. Nerve studies showed no evidence of peripheral neuropathy or myopathy. Tr. 1066-1069.

On November 7, 2019, the ALJ found that Torres was not disabled under sections 216(i) and 223(d) of the Act. Tr. 21-37. The ALJ sequentially found that Torres:

(1) had not engaged in substantial gainful activity since her alleged onset date of November 3, 2015 (Tr. 24);

(2) had severe impairments: lumbar and cervical spine disorders;

(3) did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526) (Tr. 25);

(4) retained the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except that Torres could lift, carry, push, and pull ten pounds occasionally and less than ten pounds frequently. She could sit for six hours, stand for two hours, and walk for two hours. She could stand for one minute to stretch without leaving her work site. She could occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. She could occasionally stoop, kneel, and crouch but never crawl. She could frequently balance. She could never work at unprotected heights but could occasionally work with moving mechanical parts and operating a motor vehicle (Tr. 26). Therefore, she could not perform past relevant work (Tr. 33); and

(5) as per her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Torres could perform (such as order clerk, charge account clerk, and addresser). Tr. 36.

The ALJ considered listing 1.00 for musculoskeletal impairments and found that the evidence did not establish that her spine disorder resulted in functional loss as per listing 1.00B2b to satisfy the criteria of listing 1.04. The record did not support severe neurological conditions or gradual deterioration of her medical conditions as confirmed by her neurologist, or include referrals to a neurosurgeon. The ALJ gave great weight to Dr. Hernández's and the State agency medical consultants' opinions about Torres's spine disorders because they were consistent with SIF evidence that Torres's conditions did not meet a listing severity. Tr. 25. The ALJ gave great weight to Dr. Hernández's RFC opinion regarding exertional capacity, limited to sedentary work, postural restrictions, and manipulative restrictions because he considered all the evidence

Torres v. Commissioner of Social Security, Civil No. 21-1393 (BJM)                                    14

available. The ALJ gave great weight to Dr. Miranda's opinion that Torres could perform the exertional demands of sedentary work as to lifting and carrying and little weight to the portion about bending and squatting because it lacked specificity and was inconsistent with his other notes. The ALJ also found that Dr. Miranda's opinion about limitations standing, walking, and sitting were not entirely supported by his record. The ALJ gave some weight to Dr. Miranda's opinion that she needed rest periods. Tr. 29-35.

The ALJ considered Torres's RFC, age, education, and work experience in conjunction with the Medical-Vocational Rule 201.17 and noted that Torres's age category would change on December 5, 2019 (a day before her birthday and within one month of the decision date) from younger individual age 18-44 to younger individual age 45-49 and concluded that "the use of the next higher age category is not supported because the evidence did not support significant adverse impact of all factors on the claimant's ability to adjust to other work." Tr. 34. The ALJ explained that using the higher age category would result in a finding of "disabled" based on Rule 201.17 but that the use of a higher age category in a "Borderline Age" situation was not automatic. As to education, Torres graduated high school but since she was not able to communicate in English, she was considered illiterate in English, a factor already contemplated in Rule 201.17. As to work, Torres's six-year continuous work history that ended in the recent past was not a disadvantageous factor to justify using a higher age category. As to RFC, the ALJ found that Torres's limitations did not substantially erode the unskilled sedentary occupational base. Tr. 34.

On December 3, 2019, Torres requested that the Appeals Council review the ALJ's decision, claiming that the ALJ's decision was not based on substantial evidence and that the ALJ should have found her disabled under Medical Vocational Guideline 201.17. Tr. 610, 691-693. On June 25, 2021, the Appeals Council denied Torres's request for review, finding no basis for changing the ALJ's decision, rendering the ALJ's decision the final decision of the Commissioner. Tr. 1. The present complaint followed. ECF No. 1.

## DISCUSSION

This court must determine whether there is substantial evidence to support the ALJ's determination at step five in the sequential evaluation process that based on Torres's age, education, work experience, and RFC, there was work in the national economy that she could perform, thus rendering her not disabled within the meaning of the Act.

As a preliminary matter, Torres made a cursory reference to her belief that the ALJ erred by finding that she did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1, particularly by discarding Listings 1.00, 1.00B2b, 1.04, and 11.14. ECF No. 12 at p. 4. However, Torres does not explain why or how. *See, e.g.*, *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). Given Torres's failure to develop even the outline of an argument, I deny any claim made by Torres as to the listings.

Torres first argues that the ALJ erred by not finding her disabled due to her borderline age, as per HALLEX I-2-2-42 and Medical Vocational Guideline 201.17. Age as a vocational factor is explained in 20 C.F.R. § 404.1563. In evaluating a claimant's age, the ALJ will consider and apply a claimant's chronological age in combination with a claimant's RFC, education, and work experience as per paragraphs (c) through (e) of this section. 20 C.F.R. § 404.1563(a). In a borderline situation, 20 C.F.R. § 404.1563(b) and HALLEX I-2-2-42 provide guidance as to how to treat these cases. "SSA will not apply the age categories mechanically in a borderline age situation. If a claimant is within a few days to a few months of reaching an older age category (herein 'higher age category') and using the higher age category would result in a determination of decision that the claimant is disabled, SSA will consider whether to use the higher age category after evaluating the overall impact of all the factors of the case." HALLEX I-2-2-42, citing 20 C.F.R. § 404.1563 and 416.963. Torres lists in her memorandum the factors considered under a borderline age situation but does not argue as to how each factor is "relatively more adverse" under the latter age category, only stating that the period under review is "disadvantageous to plaintiff as a Borderline Age Situation existed" and that she should have been found disabled under Rule 201.17. ECF No. 12.

HALLEX I-2-2-42 also requires the ALJ to include in the decision an explanation that the borderline age situation was considered, whether the ALJ applied the higher age category or the chronological age, and to note the specific factors considered. "In a borderline situation, this requirement is necessary for meaningful judicial review of the ALJ's decision as to which age category is appropriate under the circumstances." *Jolliemore v. Berryhill,* Civil Action No. 17-12533-LTS, 2018 U.S. Dist. LEXIS 18474 (D. Mass. Oct. 29, 2018) at *12, quoting *Justice v. Astrue,* 58 F. Supp. 2d 110, 111 (D. Mass. 2008).

On November 7, 2019, (decision date), the ALJ noted that Torres, born December 6, 1974, was forty years old on her onset date of November 3, 2015, and was considered to be a younger individual age 18-44, but that Torres would turn forty-five years old less than a month from the decision date, resulting in a change of age category to the 45-49 years old age group. "In a borderline situation, the ALJ has discretion to determine whether the higher age category should apply. … The ALJ will use the date of the decision to measure the claimant's borderline age for SSI eligibility." *Jolliemore,* 2018 U.S. Dist. LEXIS 18474 at *9 (citations omitted).

Generally, if a person is under age fifty, it is not considered that age will seriously affect that person's ability to adjust to other work. In some circumstances, a person age 45-49 might be considered more limited in her ability to adjust to other work when compared to persons who have not attained the age of forty-five. 20 C.F.R. § 404.1563(c). The ALJ considered in the decision that the closer the claimant is to the next higher age "the more disadvantageous," that Torres would change age category in approximately twenty-nine days, and that if the higher age category were used to evaluate this case, Medical Vocational Rule 201.17 would have led to a finding of disabled. However, the ALJ also explained that the use of the higher age category in a "Borderline Age" situation was not automatic and required an analysis of "whether an adjudicative factor is relatively more adverse under the criteria of each rule or whether there is an additional element that seriously affects the ability to adjust to other work. In doing so, the undersigned must be careful not to double-weigh a factor if the Medical Vocational rule for the higher age category already incorporates the factor. The main factors of the case are the following: (1) time period, (2) education, (3) past relevant work (PRW), and (4) … RFC." Tr. 34. The ALJ considered age in combination with RFC, education, and work experience for each of the Medical-Vocational rules for chronological age and the higher age category, and concluded that the factors in the record did not support applying the higher age category. Tr. 34-36.

As to education, the ALJ noted that Torres was not able to communicate in English and was considered in the same way as an individual who is illiterate in English (20 CFR 404.1564), factor that was already contemplated in the higher age category and would be "'double-weighing'" to use this factor to support an allowance."[2] Tr. 34. The ALJ also assessed that Torres's past relevant

---

[2] Effective April 27, 2020, new rules govern how the Commissioner evaluates the vocational factor of education. *See* 85 Fed. Reg. 10586-10603; SSR 20-01p, 2020 WL 1285114, at *2. As of that date, a claimant is "illiterate" only if he or she "is unable to read or write a simple message in any language." *Id.* at *3; *see also id.* at *3 n.8 ("We no longer have an education category of 'inability to communicate in

work as a fast food worker for six years was in the recent past and not a disadvantageous factor. As to RFC, the ALJ found that Torres had the ability to do substantially all of the exertional activities of sedentary work. Tr. 34-35.

As discussed above, being considered in a higher age category only because it is more favorable is not automatic and, upon review of the ALJ's decision, I find that the ALJ properly considered and explained the factors, as required.  Torres's claim as to error in the borderline age category used to deny benefits is without merit.

Torres also argues error in step five, that the ALJ wrongly concluded that considering her age, education, work experience and assessed RFC, there were jobs in the national economy she could perform. At step five, the claimant has met her burden to show that she is unable to perform past work, and the burden shifts to the Commissioner to come forward with evidence of specific jobs in the national economy that the claimant can still perform. *Arocho v. Sec'y of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982). The Commissioner may satisfy this burden by obtaining testimony from a VE or, where appropriate, by referencing the Medical-Vocational Guidelines ("the Grid"). *Seavey v. Barnhart*, 276 F.3d 1, 5 (1st Cir. 2001). The Grid "consists of a matrix of the applicant's exertional capacity, age, education, and work experience. If the facts of the applicant's situation fit within the Grid's categories, the Grid 'directs a conclusion as to whether the individual is or is not disabled.'" *Id.* (quoting 20 C.F.R. pt. 404, subpt. P, App. 2, § 200.00(a)).

The ALJ here considered Medical Vocational Rule 201.23 and explained that a finding of "not disabled" would have been directed by that rule if Torres had the RFC to perform a full range of sedentary work. The ALJ correctly concluded that reliance on this rule alone would be insufficient, given that Torres's RFC was for a reduced, rather than full, range of sedentary work. Tr. 25; *see Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999) (explaining that if the Grid does not "*completely and accurately* represent a claimant's limitations," the ALJ is required to obtain

English' as of April 27, 2020."). SSR 20-01p further added that "[w]e will generally find that an individual who completed fourth grade or more is able to read and write a simple message and is therefore not illiterate." *Id.* at *3. Torres is literate in Spanish and completed the twelfth grade and she would no longer be deemed "illiterate" under the Commissioner's rules, whether or not she could communicate in English. *See* SSR 20-01p, 2020 WL 1285114, at *2 ("Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education."). Grid Rule 201.17 and 20 CFR 404.1564(b)(5) were in effect at the time of the ALJ's decision in this case, dated November 7, 2019, but not by June 25, 2021, when the Appeals Council denied Torres's request for review.

and consider vocational expert testimony) (emphasis in original); *Ortiz*, 890 F.2d at 524. The ALJ thus appropriately turned to VE testimony to determine whether any jobs were available in the national economy for Torres. Tr. 36.

The ALJ is also required to express a claimant's impairments in terms of work-related functions or mental activities, and a VE's testimony is relevant to the inquiry insofar as the hypothetical questions posed by the ALJ to the VE accurately reflect the claimant's functional work capacity.  *Arocho*, 670 F.2d at 375.  In other words, a VE's testimony must be predicated on a supportable RFC assessment. *See* 20 C.F.R. § 404.1520(g)(1). An RFC assessment is "ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (*citing* 20 C.F.R. §§ 416.927(e)(2), 416.946). But because "a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Id.*  Also, when determining which work-related limitations to include in the hypothetical question, the ALJ must: (1) weigh the credibility of a claimant's subjective complaints, and (2) determine what weight to assign the medical opinions and assessment of record.  *See* 20 C.F.R. §§ 404.1527, 404.1529. A claimant is responsible for providing the evidence of an impairment and its severity; the ALJ is responsible for resolving any evidentiary conflicts and determining the claimant's RFC. 20 C.F.R. § 404.1545(a)(3); *see also Tremblay v. Sec'y of Health & Human Servs.*, 676 F.2d 11, 12 (1st Cir. 1982).

Sedentary work, as defined in 20 C.F.R. 404.1567(a), "involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." The ALJ found that Torres retained the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except that Torres could lift, carry, push, and pull ten pounds occasionally and less than ten pounds frequently. She could sit for six hours, stand for two hours, and walk for two hours. She could stand for one minute to stretch without leaving her work site. She could occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. She could occasionally stoop, kneel, and crouch but never crawl. She could frequently balance. She could never work at unprotected heights but could occasionally work with moving mechanical parts and operating a motor vehicle. Tr. 26.

As to credibility of a claimant's subjective complaints, Torres did not file function reports for the ALJ to weigh her self-reported subjective complaints, but there is evidence throughout the record that she continuously reported to medical treating and consulting sources that she felt moderate low back pain that extended to her right lower extremities, which caused exertional, postural, and environmental limitations that impeded her from performing past relevant work. The ALJ found that Torres's allegations to Dr. Padilla (that she experienced lower back pain that radiated to her right leg and that she had difficulty switching from sitting to standing and walking) were consistent to those Torres offered to Dr. Blas (that she was unable to sit or stand for prolonged periods of time). I also note that Torres's testimony is consistent with evidence of lower back pain limiting her ability to walk, lift and carry, but not to the extent testified as there is other evidence that suggests otherwise.

As to weight of the medical opinions and assessments of record, for cases filed before March 27, 2017, such as this one, 20 C.F.R. § 1527(c)(2) and SSR 96-2p instruct that a treating source's opinion is entitled to controlling weight only to the extent that it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence of record. Once the ALJ decides what weight to give a treating source, under the "good reasons" requirement, the ALJ is required to include in the notice of determination "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p.  The ALJ may reject a treating physician's opinion when it is not supported by clinical evidence or is inconsistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Arias v. Comm'r Soc. Sec'y*, 70 F. App'x 595, 598 (1st Cir. 2003).  The ALJ's decision in this case at Tr. 26-33 contains a lengthy summary of the treating, examining, and consultative opinions the ALJ considered, and the ALJ's specific reasoning behind the weights assigned, which I find was sufficient to give the court notice of the weight given to the medical opinions.

The evidence in the SIF record shows that Torres had been experiencing moderate lower back pain since August 2014, exacerbated by a work accident in 2015, that eventually extended to her right leg and augmented in persistence and duration, affecting her ability perform past relevant work because of exertional, postural, and environmental limitations. Torres has continuously

sought treatment for her conditions and pain at hospitals and with treating physicians. In 2015, while she was observed walking without difficulty and physical exams of her extremities were normal, in October, she had a positive straight leg raise test, and continued to test positive in this exam. According to 2015 SIF physical therapy notes, Torres could tolerate five to ten minutes out of thirty minutes of sitting, standing, or walking. She could not remain in one position for long or bend to pick something off the floor because the pain increased. A 2016 radiology report evidenced the presence of degenerative disc disease that continued to be detected in posterior exams. Her conditions continued despite treatment with medications, physical therapy, and even low back infiltrations, but not at the level of requiring neurosurgery. A January 2018 SIF assessment indicates that Torres should avoid lifting, pushing, and pulling more than ten pounds and avoid fixed postures.

Torres argues that the ALJ erred in giving partial weight to Dr. Miranda's and Dr. Blas's opinions regarding balance, standing and walking, and bending and squatting, favoring Dr. Hernández's opinions. Dr. Miranda, treating physician, diagnosed lumbar spondylosis and low back pain and treated Torres's lower back conditions. In 2018, Torres rated her lower back pain to Dr. Miranda at a 5. His 2015 to 2019 notes indicate that her back curvature was normal but she had lower back tenderness and her extremities ROM was adequate with no deformities or edema. Dr. Miranda assessed that Torres could sit for two hours with rest periods in an eight-workday, and stand/walk for two hours with rest periods. She could frequently (34% to 66%) lift and carry less than ten pounds, occasionally (6% to 33%) lift and carry ten pounds, rarely (1% to 5%) lift and carry twenty pounds, and never lift and carry fifty pounds. Torres could rarely bend or squat, and could occasionally craw, climb, or kneel. Torres needed unscheduled breaks. She had no limitations doing gross manipulation with her hands, fine manipulations with her fingers, or reaching with her arms (including overhead). The ALJ gave great weight to Dr. Miranda's opinion that Torres could perform the exertional demands of sedentary work as to lifting and carrying and little weight to the portion about bending and squatting because it lacked specificity and was inconsistent with his other notes. The ALJ also found that Dr. Miranda's opinion about standing, walking, and sitting limitations were not entirely supported by his record. The ALJ gave some weight to Dr. Miranda's opinion that she needed rest periods. The ALJ's decision to give Dr. Miranda's assessment these weights is supported by the record. I found no evidence in the

treatment notes of limitations related to standing, walking, and sitting or rarely being able to bend or squat other than giving credit to her moderate pain allegations.

Torres also points out that the ALJ only mentioned Dr. Padilla's report of an antalgic gait without mentioning that she sometimes needed support to walk. Dr. Padilla, consultative examiner, noted that Torres's gait was antalgic and that she limped on her right side but was able to walk 15-20 feet with no gait aid. Her balance was inconsistent and intermittently required support such as walls but did not lose balance. Dr. Rodríguez, State agency consultant, assessed that Torres had the RFC to perform past relevant work, and Dr. Meléndez affirmed. While part of their assessments are consistent with the ALJ's ultimate RFC assessment, the ALJ noted, and I agree, that since their assessments are from 2016 and the consultants didn't have the full record available to review, partial weight was appropriate because other findings were not consistent with the evidence of record.

Dr. Blas found that Torres had right shoulder, cervical, and lumbar ROM restrictions, that she walked with a rigid spine and intermittently limped from the right leg. Torres could sit, stand, and walk with a limp. The ALJ gave partial weight to the opinion of Dr. Blas because he did not specify the extent of limitations. Torres pointed out that the ALJ left out the part of Dr. Blas's assessment about her being able to sit, stand, and walk which reads "as described" and therefore misinterpreted the assessment when concluding that Torres could do these activities without restriction when in fact "as described" meant "unable to remain sitting or standing for prolonged periods of time due to low back pain." Dr. Blas's assessment only makes reference to "walk as described" at Tr. 1023. Torres is mistaken in her take that Dr. Blas assessed inability to remain sitting or standing for prolonged periods of time because the portion she cites pertains to her self-reported history and pain complaints at Tr. 1020. Dr. Blas's assessment about Torres's ability to walk with a limp is consistent with Dr. Padilla's same observation.

The ALJ gave great weight to Dr. Hernández's RFC opinion regarding exertional capacity, limited to sedentary work, postural restrictions, and manipulative restrictions because he considered all the evidence available. Tr. 28-35. Dr. Hernández assessed that Torres could perform sedentary work: lift/carry ten pounds occasionally and less than ten pounds frequently, stand and walk for two hours each and sit for six hours. She could stand every hour to stretch for one minute without having to abandon her work area. She could occasionally climb stairs and ramps but never climb ladders, ropes, or scaffolds. She could balance frequently, and occasionally stoop, kneel,

Torres v. Commissioner of Social Security, Civil No. 21-1393 (BJM)                                    22

and crouch. She could never crawl or be in unprotected heights. She could occasionally move mechanical parts and drive. The ALJ found, and I so agree, that this assessment is consistent with the totality of the evidence and prior assessments discussed above. The ALJ adopted Dr. Hernández's RFC assessment in the first hypothetical question posed to the VE at the supplemental hearing, for which the VE testified that Torres could perform other work in the national economy.

As discussed above, I find that the ALJ properly considered all the opinions in the record in assessing the RFC, and that the RFC is supported by substantial evidence.

<b>CONCLUSION</b>

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of February, 2023.


                                        *s/ Bruce J. McGiverin*
                                        BRUCE J. MCGIVERIN
                                        United States Magistrate Judge